NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAZZ PHOTO CORP., through its Liquidating Trustee BRIAN T. MOORE, <br><br> Plaintiff, <br><br> v. <br><br> DREIER LLP, f/k/a DREIER & BARITZ LLP, JOHN CROSSMAN and KAPLAN & GILMAN, L.L.P., <br><br> Defendants. | CIVIL ACTION NO. 05-5198 (DRD) <br><br><br> OPINION |

Appearances

BUDD LARNER, P.C..
Peter J. Frazza, Esq.
Donald P. Jacobs, Esq.
Allen L. Harris, Esq.
150 John F. Kennedy Pkwy
Short Hills, NJ 07078
 *Attorneys for Plaintiff*

MARSHALL, DENNEHY, WARNER, COLEMAN & GOGGIN
John L. Slimm, Esq.
Woodland Falls Corporate Park, Ste 300
200 Lake Drive East
Cherry Hill, NJ 08002
 *Attorneys for Defendants Dreier LLP and John Crossman*

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Thomas F. Quinn, Esq.
John P. O'Tool, Esq.
33 Washington St
Newark, NJ 07102
 *Attorneys for Defendant Kaplan, Gilman, Gibson & Dernier, L.L.P., f/k/a Kaplan & Gilman, L.L.P.*

JOHN CROSSMAN, Esq.
c/o Zukerman, Gore & Brandeis, L.L.P.
875 Third Avenue, 28th Floor
New York, New York 10022
    *Pro Se Defendant*

## *OPINION*

## DEBEVOISE, Senior District Judge

    The Plaintiff in this case is Jazz Photo, Inc. ("Jazz"), through its liquidating trustee Brian T. Moore.  Jazz is presently undergoing liquidation under the supervision of the United States Bankruptcy Court for the District of New Jersey.  Jazz's petition for Chapter 11 bankruptcy was the direct result of a verdict of approximately $30 million entered against it in the case of <u>Fuji Film Co. v. Jazz Photo Corp., et al</u>.  The Defendants in this case are the law firm of Dreier LLP, also known as Dreier & Baritz ("Dreier"), John Crossman, Esq. ("Crossman"), and the law firm of Kaplan & Gilman, L.L.P. ("Kaplan & Gilman").  The Defendants represented Jazz in the <u>Fuji</u> case and are presently being sued for allegedly committing malpractice during their representation of Jazz in that case.  Plaintiff additionally seeks a declaratory judgement that it does not owe defendants (as unsecured creditors in the Bankruptcy Court) any money claimed as attorneys fees for their representation of Jazz in the <u>Fuji</u> matter.  Presently before the court is Plaintiff's cross-motion to remand this matter to the Superior Court of the State of New Jersey pursuant to 28 U.S.C. § 1447(c) (remand for lack of subject matter jurisdiction), 28 U.S.C. § 1334(c)(2) (mandatory abstention and remand), 28 U.S.C. § 1334(c)(1) (permissive abstention and remand), and 28 U.S.C. § 1452(b) (remand on any equitable ground).  For the reasons set forth below Plaintiff's motion is denied.

2

## FACTS

This is a malpractice action brought by Plaintiff Jazz Photo, Incorporated ("Jazz") against the attorneys who represented Jazz in a patent infringement lawsuit tried in front of a jury in the District of New Jersey in 2002, Fuji Photo Film Co v. Jazz Photo Corp., Civ. No. 99-2937 (FSH). (Am. Compl. ¶ 1.) In that case, Plaintiffs were sued by Fuji Photo Film ("Fuji") for infringing certain patents by importing used single use, disposable cameras called "lens fitted film packages" ("LFFP"s). (Am. Compl. ¶ 9.) A key issue in the case was whether Jazz's refurbishment of the cameras constituted "reconstruction" (prohibited by patent law) or "repair" (permissible by patent law) of those cameras. (Am. Compl. ¶ 10.)

During the thirteen-day trial, the jury, by stipulation of the parties, gave an advisory verdict as to the issue of "repair" versus "reconstruction," the central disputed issue in the case. The Court issued a post-trial opinion, 249 F. Supp. 2d 434 (D.N.J. 2003), finding that approximately ninety percent of Jazz's cameras were infringing either because they were "reconstructed" as opposed to "permissibly repaired" or because the cameras were not even subject to the "repair" defense. The District Court entered judgement against Jazz for nearly $30 million, resulting in Jazz filing for Chapter 11 bankruptcy. (Am. Compl. ¶ 43.) The bankruptcy proceedings have been overseen by Bankruptcy Judge Morris Stern ever since.

On April 12, 2005 the Bankruptcy Court entered an order authorizing the retention of Budd Larner, P.C. as special litigation counsel to Jazz to file and pursue this malpractice action. (Am. Compl. ¶ 45.) Jazz, through its liquidating trustee Brian T. Moore, filed an amended complaint and jury demand in the Superior Court of the State of New Jersey, alleging that the three defendants committed legal malpractice and negligence in their representation of Jazz in the

earlier action. (Jacobs Aff. Ex. A.) That claim was removed to the United States District Court for the District of New Jersey on June 24, 2005. (Jacobs Aff. Ex. B.) For its claim of malpractice Jazz specifies five alleged acts or omissions on the part of Defendants in its Amended Complaint:

> 1. Entering into a stipulation that limited Jazz's proofs to those which were presented in an administrative proceeding before the United States International Trade Commission (ITC or Commission), thereby impairing Jazz's ability to prove the critical affirmative defense of permissible repair;
>
> 2. Failing to argue that a ruling of the United States Court of Appeals for the Federal Circuit should be given only prospective effect (as opposed to retroactive effect), thereby failing to cause the district court to address that argument and failing to preserve that argument for appeal;
>
> 3. Failing to present proofs at trial that were readily available and of obvious and critical importance , which would have prevented the district court's conclusion - affirmed on appeal - that Jazz failed to prove the process used to refurbish 90% of the cameras at issue;
>
> 4. Failing to present proof as to the number of cameras refurbished by two of Jazz's suppliers when such proof was important and available; and
>
> 5. Failing to properly prepare witnesses before they were called to testify at trial.
>
> (Am. Compl. ¶ 2.)

Jazz asserts claims for common law negligence, demanding judgement against defendants jointly and severally for damages, costs, and attorneys' fees in addition to attorneys' fees and expenses that Defendants have received and reasonable attorneys' fees and expenses paid to third parties. (Am. Compl. ¶¶ 48-64.) Additionally, Jazz asserts that Dreier has filed an unsecured claim against Jazz in the Bankruptcy Court for fees and disbursements due and owing, and Jazz demands a declaratory judgement that it does not owe any defendant any money as an unsecured

creditor in Bankruptcy Court. (Am. Compl. ¶¶ 59-61.)

After this case was removed to the District Court, it was referred to the United States Bankruptcy Court on August 11, 2005 pursuant to the Standing Order dated July 23, 1984. On August 17, 2005, Defendants moved to withdraw the reference to the Bankruptcy Court. On September 27, 2005, this Court denied Defendants' motion to withdraw the reference without prejudice. On September 30, 2005, the parties entered into a stipulation, and agreed to the following:

> 1. The adjudication of the trustee's Objection will await final determination of the trial and appellate process, if any, of the Malpractice Action.
>
> 2. No party to this Stipulation will be prejudiced in any way by having adjudication of the Trustee's Objection await final determination of the Malpractice Action.
>
> 3. The amount of money that would be paid to Dreier if Claim No. 69 were to be allowed will be held in reserve by the Trustee until after final determination of the Malpractice Action, and Claim No. 69 shall be treated as a disputed claim under the Liquidating Trust Agreement (the "Trust Agreement") after resolution of the Malpractice Action.
>
> 4. Nothing contained herein shall affect, amend, modify or delay in any way, the claims asserted, or the relief sought by the Trustee in the Malpractice Action.
>
> 5. The adjudication of Kaplan, Gilman, Gibson & Dernier's ("Kaplan") Objection, dated September 6, 2005, to the Omnibus Motion to Expunge Claims will await final determination of the trial and then appellate process of the Malpractice Action. The parties acknowledge that there is presently a motion to withdraw the reference of the Malpractice Action from the Bankruptcy Court.
>
> 6. No party to this Stipulation will be prejudiced in any way by having Kaplan's September 6, 2005 Objection to the Omnibus Motion to Expunge Claims await final determination of the Malpractice Action.
>
> 7. The amount of money that could be paid to Kaplan if its Objection dated

> September 6, 2005 were to ultimately be successful will be held in reserve by Brian Moore until (1) after final determination of the Malpractice Action and (2) an Order of the Bankruptcy Court allowing for the release of such money from reserve.

(Jacobs Aff. Ex. G)

In a status conference on October 17, 2005, Judge Stern stated that "the Chapter 11 case here is all but concluded." (Tr. 39:6-39:7.) Judge Stern also pointed out "...this legal malpractice case was clearly contemplated in the disclosure statement, in the plan and in various motions, not the least of which was the motion which resulted in the retention of the Budd Larner firm to represent the debtor and the trust in this case. The Court must therefore say in its view...that certain factors present in the Resorts case are absolutely not present here." (Tr. 39:22-40:6.) Judge Stern advised the Defendants to renew their motion for withdrawal of the reference to the Bankruptcy Court. In a bench opinion delivered on December 12, 2005, this Court granted Defendants' renewed motion to withdraw the reference. Plaintiff opposed the motion to withdraw the reference and now cross-moves to remand this case to the Superior Court of the State of New Jersey.

There remain several unresolved motions which must be decided in this case once the court decides whether or not to remand this matter. Defendants have filed (1) a motion for partial dismissal/ summary judgement on the amended complaint, and (2) a motion to disqualify Budd Larner as counsel for the Plaintiff. Additionally, there remains a motion filed by Plaintiff, to hold Defendants and their counsel in contempt. Both of Defendants' motions will be heard in the District Court, and Plaintiff's motion for contempt is pending before Judge Stern in the Bankruptcy Court.

## DISCUSSION

Plaintiff has moved to remand the malpractice action to the Superior Court of the State of New Jersey ("the state court"). Plaintiff cites three different reasons for remand: (1) lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c), (2) mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2), and (3) permissive abstention/ equitable remand pursuant to 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b). None of these provisions warrant remand.

A.    Lack of Subject Matter Jurisdiction

"Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as "core" proceedings; whereas proceedings "related to" a case under title 11 are referred to as "non-core" proceedings. In re Resorts International, Inc., 372 F.3d 154, 162 (3d Cir. 2004).

Plaintiff argues that the case at bar lacks subject matter jurisdiction and is analogous to In re Resorts International, Inc.. Plaintiff contends that its demand for declaratory judgement is the only core proceeding in this case. Plaintiff argues that this is the smallest part of this case. Plaintiff additionally claims that the stipulation contained in Exhibit "G" of the Jacobs Affidavit

renders the demand for declaratory judgment irrelevant in determining the present motion because survival of that claim is entirely dependent on the result of the malpractice action. Plaintiff argues that litigating the malpractice action in the district court would unfairly stretch this court's "related to" jurisdiction as was the case in <u>Resorts</u>. Plaintiff cites the comment made by Judge Stern at the status conference on October 17, 2005 that "the essential legal malpractice case here has as its overriding characteristics, non-core aspects." (Tr. 40:23-40:25.)

In <u>Resorts</u>, the Bankruptcy Court previously dismissed a Chapter 11 Litigation Trust's malpractice claim against an accounting firm that provided it with tax advice and accounting services after initiation of the bankruptcy action. The Bankruptcy Court initially held that there was a lack of subject matter jurisdiction where the action was instituted "post confirmation," and dismissed the malpractice claim pursuant to 28 U.S.C. § 1447(c). The District Court overturned the Bankruptcy Court's decision and chose not to remand the case to the state court. <u>Binder v. Price Waterhouse & Co. (In re Resorts Int'l. Inc.)</u>, No. 02-1333, Slip. Op. (D.N.J. Dec. 18, 2002). The District Court held that "the terms on which the Litigation Trust was created and its practical role in the Plan lead to the conclusion that claims arising from professional misconduct in the Trust's affairs are sufficiently related to the bankruptcy case to be within jurisdiction of the Bankruptcy Court." <u>Id.</u> at 19. "Confirmation did not terminate the estate with respect to the property vested in the Litigation Trust; and the Trust represented a partial continuation of the estate. Consequently, the jurisdiction of the bankruptcy court over proceedings arising from the affairs of the Litigation Trust is not substantially different from its jurisdiction over similar matters pre-confirmation, and it should have the power to hear claims of professional malpractice in the administration of the Trust." <u>Id.</u> at 12.

The Court of Appeals for the Third Circuit overturned the District Court's decision, holding that:

> "...we believe this proceeding lacks a close nexus to the bankruptcy plan or proceeding and affects only matters collateral to the bankruptcy process. The resolution of these malpractice claims will not affect the estate; it will have only incidental effect on the reorganized debtor; it will not interfere with the implementation of the Reorganization Plan; though it will affect the former creditors as Litigation Trust beneficiaries, they no longer have a close nexus to [the] bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims; and as stated, the jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157. For these reasons, the malpractice claims here lack the requisite close nexus to be within the Bankruptcy Court's "related to" jurisdiction post-confirmation."

Resorts, 372 F.3d at 169.

Although Plaintiff likens the present case to Resorts, it is distinguishable in several ways. Unlike Resorts, the malpractice claim in the present case originated before confirmation, and even before Jazz filed for Chapter 11 bankruptcy. As Judge Stern noted, "...this legal malpractice case was clearly contemplated in the disclosure statement, in the plan and in various motions, not the least of which was the motion which resulted in the retention of the Budd Larner firm to represent the debtor and then the trust in this case... It's been referenced to Resorts. Resorts was a case involving a post confirmation cause of action. There it was an accounting malpractice case. [In the present case] We're talking about an asset or would be asset of first the debtor and then the succeeding liquidating trust, a pre-petition legal malpractice case... I believe that this Court has subject matter jurisdiction where the case was a clear asset passed along from the debtor to the trust." (Tr. 39:22-40:18.)

Bankruptcy courts have jurisdiction to hear a proceeding if "the outcome of that

9

proceeding could conceivably have any effect on the estate being administered in bankruptcy." Resorts, 372 F.3d at 164 (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. Id. There is no question that this court has jurisdiction over Plaintiff's Count III demand for declaratory judgement. If Plaintiff were to succeed on that Count, Jazz would not owe Defendants approximately $500,000 in legal fees for their representation of Jazz in the Fuji case. That claim, in addition to being "core" certainly affects the liabilities of the debtor (Jazz) in the bankruptcy proceeding.

In Resorts, the Third Circuit Court of Appeals rationalized its ruling based on the unique fact that the claim in question was instituted post-confirmation. The Court noted that "after confirmation of a reorganization plan, retention of bankruptcy jurisdiction may be problematic." 372 F.3d at 165 (citing Bank of La. V. Craig Store of Texas, Inc., 266 F. 3d 388 (5th Cir. 2001). The Court then went into an in-depth analysis of the jurisdictional differences between action instituted pre and post-confirmation. Such an analysis is not necessary here as the malpractice claim has been brought forward well in advance of confirmation. Because the present action was initiated "pre-confirmation," there need only be some nexus between the bankruptcy plan or proceeding. See Pacor, 743 F.2d 984.

The malpractice action can be construed as a counterclaim against creditors. Defendants are creditors in the bankruptcy proceeding due to the approximately $500,000 in legal fees they seek to collect at some point. Additionally, it is clear that the malpractice action was contemplated well in advance of Jazz's filing for bankruptcy under Chapter 11. Plaintiff will

10

surely argue that Jazz's bankruptcy is a direct result of the malpractice committed by the defendants. The malpractice claim is an asset owned by Jazz and if authenticated by trial, would become part of the liquidated assets of that corporation. Judgement in favor of Plaintiff could conceivably affect the bankruptcy estate and the proceeds available for distribution to Jazz's creditors. Where the malpractice action is this closely related to the bankruptcy matter, and has been initiated pre-confirmation, as in the present case, there exits sufficient nexus between the malpractice action and the Chapter 11 bankruptcy for this court to possess subject matter jurisdiction.

B.    Abstention

There are two types of abstention provided for by 28 U.S.C. § 1334(c):

> (1) [permissive]  Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11; and
>
> (2) [mandatory]  Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction....

28 U.S.C. § 1334(c)(1)-(2).

Plaintiff contends that abstention in this case is required by subsection (c)(2). Alternatively, Plaintiff urges the court to exercise discretion and abstain pursuant to subsection (c)(1). Neither type of abstention is appropriate in this instance.

(i) Mandatory Abstention

In order for mandatory abstention to occur, the party seeking abstention must show that:

(1) there has been a timely motion for abstention;

(2) the proceeding is based on state law;

(3) the proceeding is related to a case under title 11;

(4) the proceeding does not arise under title 11 or in a case under title 11;

(5) the proceeding could not have been brought in federal court except for 28 U.S.C. section 1334; and

(6) an action has been commenced in a state court of appropriate jurisdiction and can be adjudicated there in a timely manner.  Balcor/Morristown Ltd. Partnership v. Vector Whippany Associates, 181 B.R. 781, 788 (D.N.J. 1995).

While Plaintiff might argue that there exists an adequate basis for abstention with regards to steps (1), (2), (3), and (5), Plaintiff cannot satisfy step (4).  The malpractice action as well as the demand for declaratory judgement arise in a case under title 11.  In Balcor, the Court noted that "Congress, by virtue of its use of the 'arising under' and 'arising in' language in section 1334(c)(2), incorporated the core/non-core distinction into the mandatory abstention test.  Therefore... it is made relevant to mandatory abstention by the issue of whether this is or is not a core proceeding." 181 B.R. at 790.  As stated earlier, these claims are counterclaims against a creditor, and were thought of well in advance of the bankruptcy filing.  Plaintiff fails to meet the criteria and adequately show that this court is required to abstain.

(ii) <u>Permissive Abstention/ Equitable Remand</u>

The Court will address these two grounds using the same criteria since the standards for deciding whether permissive abstention and equitable remand will be appropriate are essentially the same. <u>Balcor</u>, 181 B.R. at 788 (<u>citing</u> <u>In re Chapman</u>, 132 B.R. 153, 158 (Bankr.N.D.Ill.1991); <u>Gorse v. Long Neck, Ltd.</u>, 107 B.R. 479, 482 (D.Del.1989); <u>In re Mill-Craft Bldg. Sys., Inc.</u>, 57 B.R. 531, 534-35 (Bankr.E.D.Wis.1986)). The permissive abstention statute itself lists the grounds for discretionary abstention:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
>
> 28 U.S.C. § 1334(c)(1).

Bankruptcy courts have considered a number of factors other than the broad outline listed above in deciding whether to exercise discretionary abstention. In <u>In re Donington, Karcher, Salmond, Ronan & Rainone</u>, 194 B.R. 750, 756-59 (Bankr. D.N.J. 1996), the Court listed additional factors that the courts use to make this determination:

(1) the effect on the efficient administration of the bankruptcy estate;

(2) the extent to which issues of state law predominate;

(3) the difficulty or unsettled nature of the applicable state law;

(4) comity;

(5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

13

(6) the existence of the right to a jury trial; and

(7) prejudice to the involuntarily removed defendants.

In the present case, none of these factors overwhelmingly suggest that remand is appropriate. The abstention of this Court would have virtually no effect on the efficient administration of the bankruptcy estate. As Judge Stern noted, the bankruptcy proceedings are all but finished. While State law issues clearly dominate the malpractice action as the Court has noted earlier, this case does not involve any novel issues of state law. Quite to the contrary, this case involves an interesting question of federal law which is one claim at the center of the malpractice action: whether Defendants committed malpractice by failing to argue that the "first sale" aspect of Jazz v. ITC should be given only prospective effect. Additionally, there are no related state proceedings taking place and the malpractice action is not at all "remote" from the bankruptcy proceedings. As has been noted repeatedly, it has been contemplated and carried as a part of the estate from the very beginning. Plaintiff's actions and seeming reluctance to try the case in the District Court (by opposing withdrawal of the reference while at the same time moving for remand) also suggest that it is actively engaged in forum shopping. Furthermore, the outstanding motion to disqualify Budd Larner (the Bankruptcy Court's appointed counsel) as Plaintiff's counsel should most appropriately be decided in the District Court. The additional underlying fact pattern of the patent case also suggests that this case is more appropriately decided in the Federal Court. The court is not convinced that permissive abstention/ equitable remand is at all appropriate in this case and to the contrary believes this case will be much more efficiently disposed of in this forum.

## CONCLUSION

For all the reasons stated above, Plaintiff's cross-motion to remand this matter to the Superior Court of the State of New Jersey is denied.

/s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.

December 20, 2005